## CARTER v. PIPER. { Aug. 10, 1876.

*Replevin—Pleading—Impeachment of witness.*

57 217
69 540
57 217
72 105

Under the general issue *non cepit* in replevin, the plaintiff must prove an unlawful taking.

Where in replevin the defendant pleaded the general issue, and a brief statement of matters of defence, and it appeared that the property replevied came into the possession of the defendant by the plaintiffs' consent—*Held* that the defendant's motion for a nonsuit should have been granted.

Persons who are acquainted with a witness, and who know his reputation for veracity anywhere where he is known, may testify to that reputation.

FROM CARROLL CIRCUIT COURT.

REPLEVIN, for a bear claimed by the plaintiffs, and alleged to have been wrongfully taken and detained by the defendant.

The writ is dated November 16, 1874.

The plea was the general issue, and a brief statement setting forth,—1st, that the bear was the property of the defendant; 2d, that it was the property of the plaintiffs and the defendant jointly; 3d, that it was the property of the plaintiffs, defendant, and others jointly.

Testimony was introduced tending to impeach the defendant. Henry T. Bragdon swore that he knew the defendant's general reputation for truth and veracity. The witnesss was then asked the following question, subject to the defendant's exception : " From what you know of his reputation, would you believe him under oath as soon as men in general ? "

Albert F. Meserve was also a witness to the reputation of the defendant. The proof was that he resided in Ossipee, and the defendant in Albany. The defendant excepted to the testimony of this witness, on the ground that he did not live in the neighborhood of the defendant.

Samuel F. Lewis was also a witness to the defendant's reputation. Witness resided in Ossipee, and testified that he was acquainted with the defendant's reputation in Ossipee. The exception was, that the witness could only testify to the defendant's reputation in Albany.

The plaintiffs claimed that they made a demand on the defendant for the bear. At the time of the alleged demand the bear was on the defendant's premises in Albany. The court instructed the jury that if they found that the bear was the exclusive property of the plaintiffs, and that a demand was made by the plaintiffs on the defendant for the bear before suit, they might bring in a verdict for the wrongful detention of the bear.

In answer to a question propounded by the court, the jury found that the bear was the exclusive property of the plaintiffs, and rendered a verdict against the defendant for one dollar damages.

The defendant excepted to the foregoing instruction, and moved to set the verdict aside.

The bear remained on the defendant's premises in Albany in his care after it was conveyed home by the defendant in his wagon, and was there when it was replevied by the plaintiffs.

The defendant went to the hunting-ground with a horse and wagon, a little in advance of the plaintiffs, on the morning of the capture of the bear.

The writ alleged that the place of taking and detention was in Tamworth.

There was no evidence of any tender or payment to the defendant of any sum for the care and custody of the bear by the plaintiffs.

After the plaintiffs rested their case, the defendant, by counsel, moved and argued a motion of nonsuit, which the court overruled, and the defendant excepted.

The plaintiffs and one Bragdon composed one hunting party, and the defendant and his boy and hired man the other party.

The defendant received the bear after the capture into his wagon, and conveyed it to his home in Albany, with the consent of the plaintiffs ; but there was evidence tending to show that Piper said he would take the cub, and carry him home for the plaintiffs, and that Carter said he should claim the cub.

The questions arising upon the foregoing case were transferred to the superior court by RAND, J., C. C.

*Quarles* and *S. B. Carter*, for the plaintiffs.

*J. H. Hobbs* and *Copeland*, for the defendant.

Cushing, C. J.   This is said to be an action brought for the unlawful taking and detaining of the property in dispute.   The action, I suppose, might have been brought under the act of 1873, under which it would have been sufficient to allege the unlawful detention of the property.   Until that statute was passed, it had always been held that replevin would not lie excepting where there had been an unlawful taking.   Very properly, therefore, the general issue was *non cepit*, because that denied entirely the *gist* of the action, *i. e.*, the unlawful taking. If the action had been brought under the statute for the unlawful detention, it would have been necessary to invent a new form of general issue to meet that new statutory action.   Perhaps this plea might have been *non detinuet*, and otherwise in form like the old general issue, substituting, perhaps, *did not unlawfully detain*, instead of *did not unlawfully take*.

It may be, and probably is, true, that the matter contained in the brief statement, if correct pleading had been insisted upon, could not have been alleged without at the same time distinctly admitting the taking and detention.   *Folsom* v. *Brown*, 25 N. H. 114; *Pallet* v. *Sargent*, 36 N. H. 496 ; *Pike* v. *Taylor*, 49 N. H. 124.

I understand the rule to be, that a brief statement defective in this particular would be rejected on motion.   But however that may be, it is also well settled, that, however inconsistent the pleas may be, the merit of each has to be tried by itself, and no trial of an issue on one plea can be aided by the admissions of another.   It is true, that under the law as it stood previous to the act of July 2, 1831, entitled "An act to abolish special pleading," it was necessary under the old statute to obtain the leave of court to plead double ; and this leave was not always granted for the purpose of enabling the party to plead inconsistent pleas.

In " Barnes's Notes," a work published about 1780, there are some striking instances of the refusal of the court to permit double pleading in such cases.   This practice of refusing leave to plead inconsistent pleas seems gradually to have fallen into disuse, until finally the sweeping enactment of 1831 was made, which enabled the defendant in all cases to cast the burthen of proof upon the plaintiff, even when he could not enter upon his real defence without substantially admitting just what he was before permitted to require the plaintiff to prove.   It is not necessary to pursue this subject further now ; but the whole history of our law in this particular affords most pregnant illustration of the manner in which and the extent to which the legislature has controlled and regulated by law the making up of issues for the jury, and the regulation of the burthen of proof.

It appears that at the trial of this case the plaintiffs had to make out under the general issue the unlawful taking by the defendant, and it is

clear that the defendant could not be put upon his defence and called upon to show any justification which he might have had, until the plaintiff had made out his case under the general issue.

It appears from the amended case, that the evidence showed, before the plaintiffs rested their case, that the bear was taken away by the consent of the plaintiffs. This being so, there could be no unlawful taking, which was the matter in issue, and of course a nonsuit should have been ordered.

The case of *Kelley* v. *Proctor*, 41 N. H. 139, is authority to show that the witness's neighbors are the people who know his reputation. It may be that the witness has lived in several neighborhoods long enough to have established a reputation in each; and it may be that from other circumstances he has a reputation in neighborhoods or places more or less remote from his home. The force of the evidence might depend upon these circumstances, but his reputation in any neighborhood where he was known must have been proper to be proved.

The question which was objected to by the plaintiff is, as far as I know, the question usually put in our courts in such cases, and I am unable to see why it is objectionable. I see no reason why the declaration and pleadings might not be amended so as to relieve the plaintiff from the impossible proof which is necessary under the present pleadings ; but on the pleadings as they stand, it is clear that a nonsuit should have been ordered.

The case being disposed of on the motion for nonsuit, it is not necessary to propound any *dicta* in regard to the instructions excepted to.

LADD and SMITH, JJ., concurred.

*Verdict set aside, and nonsuit ordered.*